United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. Our first case for today is 2020-1589 Qualcomm v. Intel. Counsel, please proceed. Good morning and may it please the court. I'd like to focus on two issues where the board committed legal error. First, relating to all the challenged claims, the board denied Qualcomm the procedural safeguards of fair notice and adequate opportunity to respond under the APA. In a final written decision, the board for the first time disclosed a new construction of the term plurality of carrier aggregated transmit signals, which was both different from and materially broader than the construction advanced by either party. Specifically, the board's construction eliminated the feature of increasing bandwidth for the user, which from the petition stage, both parties agreed was properly part of the term's meaning. The board's suicide removal of the increasing bandwidth for the user feature from the construction was clearly prejudicial because it eliminated a substantive element of proof that Intel would otherwise have to establish to show unpacked ability. And this is evident from the final written decision at appendix pages 58 to 60, where the board applies the prior art to the limitation, but states that it will not consider whether the prior art disclosed the increasing the bandwidth for the user feature that both parties agreed were part of the construction. Second, relating... Oh, I was hoping I could ask you a question on that first point. This is Judge Stoll. Hypothetically, what is during the beginning of Intel's presentation to the board, the board judge interrupted and said, I'm not convinced that six words in your construction to increase the bandwidth for a user are properly part of the claim construction. I give notice that we will determine whether those words belong in the construction. Would that have been sufficient notice under the APA? Your Honors, I think in and of itself, that type of notice would not be sufficient under the APA in this court's precedent. So, for example, in cases such as Dell v. Acceleron and Revolma v. Bowler and Zito-Volt v. Amazon, this court makes clear that when the board's final written decision cancels claims based on an issue that was raised for the first time at oral argument... Counsel, your answer makes no sense. Judge Stoll didn't ask you if it satisfies the APA, which requires notice and an adequate opportunity to be heard. Judge Stoll asked you if it satisfied the notice portion. I haven't heard you address that. The cases you're referencing go to opportunity to be heard, not noticed. So, would you agree with her that that kind of statement at the outset provides sufficient notice? I mean, how does that differ from a written order by the board saying we want additional info on this? I suppose... So, your Honor, if it was strictly with respect to notice that the board said that we are considering to respond to this issue at oral hearing strictly with regard to notice, I suppose that may be sufficient, putting aside the opportunity to respond. Now, would you like to address, if at all, how the facts of this case differ from that hypothetical which you agree might be sufficient for notice purposes, or is your case hinging on adequate opportunity to be heard? I kind of think it's the latter, but go ahead. Your Honor, it's certainly the latter. It's certainly opportunity to be heard, but I think the hypothetical that Judge Stoll identifies is starkly different from the present case, that this was not where the board provided a formal indication that it was going to adopt or considering a construction that neither party advocated. Rather, the board asked one question, which the board itself characterized as a quick question, and it was directed solely to Intel, not to Qualcomm. And then, after that question, the board asked some other questions directed to different aspects of the claim construction, and the board then, as part of a larger soliloquy, made a passing statement that it would consider whether increasing bandwidth should be part of the construction. I understood Judge Stoll's hypothetical to be where the board formally identified a construction that it was considering. I don't think that happened here. And the reason why—this is Judge Stoll again—and the reason why you don't think it happened here is because you think that asking questions to opposing counsel and then saying, we're going to consider whether potentially to increase the bandwidth is required by the claim a page or two later in the transcript, that that's sufficiently different from my hypothetical? I do, Your Honor. It was one quick question, and there was no formal statement by the board that petitioner and patent owner, we are contemplating this construction. Please respond. I think in the entire context of the proceeding, this issue was across 60 months of proceedings and 20-plus briefs and six IPRs. The sum total that this issue arose in terms of notice was one question on an issue where the parties had agreed throughout the proceedings that increasing the bandwidth for the user was part of the construction. So in that context, in this context, I don't believe it was sufficient notice, no. Counsel, this is Judge Reina. Is it the case that the two limitations that we're talking about at the same time and to increase bandwidth for the user, those were briefed on the merits during the IPR. Is that correct? The limitation was briefed on the merits, Your Honor, but it's important to—the context is important. What was not briefed by either party was—well, let me rephrase that. What was not addressed specifically by Qualcomm was the increasing the bandwidth for the user because that is a part of the construction that both parties had agreed to. So Qualcomm addressed other aspects of the construction that it disagreed with. What is it that you would have argued differently? What were you prevented from proffering? You could not advance your argument because you couldn't guess the PTAB's construction. Certainly, Your Honor. If Qualcomm was—believed that the term—that part of the construction requiring increased bandwidth for the user was that issue, we would have specifically built a record and addressed that to explain to the board why that is properly part of the construction, and that would include focusing on the claim language, in particular, the term aggregation. But if the two limitations were briefed, why do you say that they were not on the record? Well, Your Honor, the focus of the briefing was addressed to parts of the construction that the parties disputed. The parties did not dispute whether increasing the bandwidth for the user should be part of the construction. The fact that the parties disputed other aspects of the construction does not lessen the need for notice and opportunity to respond to Qualcomm if the board subsequently, as it did here, removes a feature of the construction that both parties had agreed to. And I think this court's fast decision is instructive on that point, where the court— Counsel, thank you for stopping. This is Judge Stoll again. Before going into that, could you talk about what specific evidence you would rely on for your claim construction argument? And another question, why didn't Qualcomm appeal the claim construction if it thought it was wrong? So, Your Honor, let me respond to the first portion—first part of the question. I think what we would introduce if we were afforded an opportunity, again, would be the claim language itself. The board's construction deranged all meaning from aggregation. Second, we'd point to the specification, in particular figures 2A through 2D and column 2, lines 59 to 67, that support the understanding that carrier aggregation requires increased bandwidth for the user. In addition, the fact that, based on this argument, that the board could construe the term to require increased bandwidth. But that's not merely hypothetical, because in another IPR dealing with the same patent owner, the same petitioner, the same technology, and a similar patent, two of the same judges did construe carrier aggregation to require increased bandwidth, and in large part based it on statements that are very similar to those in the 675 patent. As for the second part of your question, Your Honor, the reason I think we set forth why, in this brief, why we should be afforded an opportunity in the first instance to make an argument to the board as to why increased bandwidth for the user, which is something that both parties agreed to, was properly part of the construction. But counsel, I'm sorry. Go ahead. This is Judge Moore. I don't understand a record. A record is evidence, and yet what you said you would have pointed to is just claim language and the specification. So you're telling me that this claim construction issue would only be a question of law, no matter who decided it. You're telling me that you did not have and you do not plan to introduce any pieces of prior art, technical journals, expert testimony. So why in the world, if that's the case and that's what you have said thus far, or at least you didn't mention any actual evidence, extrinsic evidence, I mean, I don't understand why you didn't appeal this directly to us. It's a question of law the way you framed it. And if you think the board got it wrong in addition to raising the APA violation, why in the world would you not have appealed it directly? So, Your Honor, let me respond in two parts. I think, and you're right, in addition to the intrinsic evidence, I think we would introduce evidence such as LTE specifications that are cited in the patent specification as establishing that increased bandwidth for the user as part of the construction. I want to make sure this is clear. So you're saying you would have introduced other patents, which are prior art, which constitute extrinsic evidence to inform how the construction should be understood, to the plain and ordinary meaning of the construction. That's what you're saying? That's certainly a possibility if it was in dispute. But in addition, I think the patent itself cites standards that address what increased bandwidth for the user, that it's part of the term carrier aggregation. Counsel, I intend to be liberal with time. I would really, if you have one more thought on this point, I'd like you to make it, but then I do want you to move on because I really want to hear you address the power tracker argument. So please proceed. Judge Moore, I also have a question I'd like to ask counsel on the same topic that we're addressing now. Go ahead, please. Okay. It seems to me that the PTAB raised this issue about whether you should import those two terms at the same time to increase bandwidth for the user. And it discussed with Intel's counsel its concern about that and whether the specification required those two limitations. Why is it that that's not enough for you to be put on notice and for you to have had the opportunity to address that concern that the PTAB was raising? It seems to me that what the PTAB is saying is that I'm unclear here where I'm going to go. Give me your arguments as to which way I should go. And I can't find that you provided that argument to the PTAB. Your Honor, I think in the context of this proceeding, entering the proceeding all the way through the proceeding, I'm sorry, entering the oral hearing all the way through the proceeding, there was no dispute that increasing the bandwidth for the user was part of the construction. At the hearing, there was only one quick question, the board term, that directed solely to Intel. There was no questions directed to Qualcomm. Respectfully, counsel, can I correct your facts? Because I think you have them wrong. There's not one quick question the board put to Intel. There's one quick question that one judge of a three-judge panel put to Intel. That does not make it a statement of the board, does it? Your Honor, it does not. But that was the only question that was directed to this issue in the entirety of the proceeding. How many questions do you think are necessary in order to give counsel notice as to an issue that's at bar? Your Honor, I don't know if there's a bright-line rule that determines how many questions would provide notice, but I think certainly, at minimum, a question is directed to the patent owner, asking them to respond to a formal hypothetical construction, which that didn't happen here. And I think, for example, this case stands in stark contrast to, for example, Intellectual Ventures v. Erickson, where there was, I think, this court and the board termed the questioning to be continuous, vigorous, and extensive. That did not occur here. Just a last point. Did you seek any supplemental briefing or rehearing to this issue? No, Your Honor. On the supplemental briefing, we did not, because the day after, the very next day after the oral hearing, the board did issue an order, and the order requested the parties to brief a different claim construction term, not this term. And the board did so, and it stated at Appendix 1624, the board said it was asking for briefing in a different term because, having considered the arguments presented at oral hearing, the panel had decided to recordly benefit from further briefing. So the board knew how to identify issues for the parties to address post-hearing, and it did not do so with respect to increasing the bandwidth term. Yes, Your Honor. This is Judge Schull. I want to ask you one more question because I'm a little troubled by your reference to the fact that Qualcomm's counsel wasn't questioned. Do you think that Qualcomm doesn't have a duty to listen while the judges are questioning Intel? No, absolutely, Your Honor. Qualcomm has a duty to listen, and it did. Now, let's say hypothetically, then, that while the board judges were questioning Intel, they asked five questions, and they also said, as a prelude to one of those questions, we're concerned, and all of us here, or two of us, are concerned about your construction and particularly this addition of to increase the bandwidth for a user. I mean, wouldn't that be sufficient to put you on notice even though the questions are being directed to Intel and not Qualcomm? I suppose it would, Your Honor, but that is not what happened here. I'm just questioning your, you know, I don't think that a rule from us that says any notice must be given while the owner is talking makes much sense. Nor are we asking for such a rule, Your Honor, but on the facts of this case, as it manifested throughout the proceeding and the hearing, I don't believe there was adequate notice on the facts of this case. Your Honor, so I'd like to address the question briefly, if I may, about the petition for rehearing. We did not seek a petition for rehearing, and for three reasons. One, I think, as Nike V. Adidas makes clear, a petition for rehearing is too late because notice— Counsel, I don't think this is—Counsel, I don't think this is helpful. Move to the power tracking. Okay. You're way beyond your time. Cover power tracking so we can ask about it the other side and ask you about it in rebuttal. If you don't cover it, you never get to. Absolutely, Your Honor. With respect to the subset of claims 28-32, the Board incorrectly construed the term means for determining a single power tracking signal. In particular, the Board's construction failed to identify the complete structure for performing the recited function. The Board identified only the power tracker without including the algorithms at column 8, lines 6-32, which are required to program or configure the power tracker to perform the recited function, and that was wrong as a matter of law under this Court's precedent. Counsel, do I remember correctly that there is another claim in the patent that is directed to a power tracker, and that term was not interpreted as means plus function? That term was understood and interpreted by the Board to be a power tracker circuit? I believe that there is a claim term, power tracker, independent of the means plus function term that is in the claims, and the Board construed, consistent with how the ITC construed it, to be a component in a voltage generator that computes the power requirement. I think an important distinction is when the Board construed the term power tracker, the dispute was whether the term power tracker in and of itself, even though it doesn't use the term means, triggers a 112-6 analysis. That is different than the situation on appeal, which is in the second step of a means plus function limitation, does a power tracker alone constitute the structure? But isn't it true in the first step that what they're looking at is whether it's a sufficiently definite structure, as opposed to being like a non-term or a meaningless term? I believe that's correct, Your Honor. The first part, almost step zero, or the threshold issue as to whether the power tracker triggers 112-6, the analysis is whether it connotes sufficient structure. The threshold step and the second step involve different inquiries, different presumptions, and serve different purposes. Are you aware of any cases in which there's a claim or something directed to a circuit, and our court held that a circuit, that is, as opposed to a general-purpose computer, and our court held that an algorithm should be the corresponding structure to the circuit? I believe in cases such as Sony v. Anku and HCP v. IPCOM are certainly analogous to that point. I can say they're analogous, but they're not circuits. Neither of those cases involve circuits, right? I don't believe they involve circuits, per se. That's correct, Your Honor. So there are no cases in which our court has held that when a claim is directed to a circuit, like a power tracker circuit, that we should interpret the corresponding structure to be algorithms? Not at that level, but... You're asking for... I just want a very... I want a yes or no answer. I'm not aware of such a case. Okay. Thank you. Counsel, let me ask, if you don't mind, one more question on this before you sit down. You know, you sort of marched through in your brief in a very methodical way why you think an algorithm ought to be the associated structure. I'm just not sure if you appreciate the catastrophic breadth of what you're asking for. I understand that you represent the patentee in this case, but the electrical arts are the most frequent user of the means-for clauses, and you're now wanting to impute an algorithm requirement into every patent, otherwise it be held indefinite, if there's a means-for that is directed to circuitry, which could implicate a logic or software component to the circuitry. That's the rule of law you're asking for. I think that rule of law is so broad that it would invalidate thousands and thousands of electrical patents that have relied upon the understanding in our law that the algorithm requirement is limited to a general-purpose computer. Will you please address why you're not asking for a rule of law that might unsettle quite a set of expectations and really amount to a radical departure from our existing precedent? Yes, Your Honor, and in two parts. I think this Court's precedent makes clear when there's an algorithm still necessary when there's a general reference to hardware or broad references to categories of hardware, such as in HTC and in Sony. And on the facts of this— Well, counsel, counsel, counsel, in HTC, our Court expressly held that the processor and transceiver, which are, by the way, components of pretty much every general-purpose computer, amounted to a general-purpose computer. So that's not, quote, hardware in the abstract. And it's definitely not a specific circuit, like a power tracker circuit. Well, Your Honor, I would say on the facts of this case, then, Intel itself has made clear that the term power tracker, as used in the 675 patent, but it's expert-opined, it does not provide any detail about the structure of the power tracker. So under the circumstances of this case— Even though during the prosecution history at A2231, there was evidence that a power tracker circuit includes a range of very specific and known circuits? Your Honor, with respect to the prosecution history, that was overcoming a rejection— And it was saying so. I believe it said that it would be— the power tracker connotes structure, sufficiently understood structure. That's a different inquiry under Section 1126, Step 2. It is a different inquiry whether that structure in and of itself is adequate to perform the claim function. But can you now try to address my breath concern? Because, you know, your brief doesn't at all, it seems to me, enormity the breadth of what you appear to be asking for, at least to my mind. So why should I not be terrified that you're going to unseat enormous swath of settled expectations about how the electrical arts use means for? Well, because under the facts of this case, Your Honor, the petitioner concedes that the power tracker does not connote or does not provide any detail about the structure, and therefore you need that corresponding algorithm. And that, I think, dovetails with cases such as Sony v. Yonku, where I believe the term was a synthesizer or controller. And this court explained that if it was truly implemented hardware, we would expect additional hardware detail. And because it was absent, this court construed the complete corresponding structure to be the controller synthesizer with a corresponding algorithm. So in that case, we said there needed to be additional hardware. Did we say there had to be an algorithm? I believe the court construed the claim to require an algorithm. Counsel, what if the record demonstrates that the tracker is a specific circuit? How does that affect your argument? If the record revealed that a power tracker by itself was adequate to perform the claimed function, then I think we would be in a situation such as, I believe, at Serrano, where you could have a specific structure by itself or you could have a broad class of hardware together with an algorithm. But we know that that's not the case here because Intel's expert told us so. Okay, thank you, Counsel. Let's hear from opposing counsel. Colleagues, are you okay with me moving on now? Yes. Okay. Then let's go ahead and hear from your opposing counsel. Good morning, Your Honor. May it please the Court, Louis Tomprous on behalf of Intel. Let me, if I could, start with Qualcomm's procedural argument. It is well established that the board is not bound to adopt either party's preferred articulated construction of a disputed claim term and is instead free to adopt its own construction. When the board does so, that is not changing theories in a way that would prohibit that action under the APA, as SAS describes. Instead, it is a permissible action by the board to reject both parties' claim constructions and adopt its own before a dispute. Counsel, let me interject. Suppose that, because SAS says the petition governs the scope of the IPR, suppose that in the petition it says clearly the claim construction is A. A is a very specific, particular thing. Patentee says no, claim construction is B. The board comes along, out of the blue, never having mentioned it at oral argument or to anyone ever, anywhere, and adopts the claim construction is instead C. And suppose both parties are befuddled by this C, claim construction, because it sort of came out of left field, has no foundation in the record, isn't supported by the SPAC. You don't think that there would be an APA problem if either or both of the parties were to complain to the court that they didn't have an opportunity to address that? Respectfully, Your Honor, I think this court's precedent makes clear that that is not an APA problem. Now, it doesn't preclude an argument on the merits, which Qualcomm is not making. Of course, either party could challenge. Under which of our precedent do you believe if the board adopts a radically different claim construction than what either party proposed, that there's no APA violation in them doing that in the first instance in the final written decision? I think the key precedents there are Western Gecko, where the court said the board is not bound to adopt either party's preferred articulated construction of a disputed claim. Does Western Gecko... Yes, of course. Mr. Tompkins, no one is disputing. Even Qualcomm does not dispute that the board may adopt a different claim construction. That's not the question. The question is, does the board have to give the parties an opportunity to be heard on that different claim construction? Saying unequivocally, no, I don't believe Western Gecko addresses that issue at all. I agree it doesn't specifically say that, but in that case there was no indication that the parties had subsequently had an opportunity to brief that. Is there an APA challenge in that case? I don't think so, Your Honour. Why would we have a record, or why would this court have decided whether it was handled appropriately from a procedural standpoint? Well, I think that issue then came up subsequently in Praxair, where there was indeed an APA challenge. In that case, the APA challenge was the argument that in construing a term, pharmaceutically acceptable was the term, the board violated a party's procedural rights by adopting a claim construction that neither party proposed. This court then said that argument is meritless. The board did not, quote, change theories in midstream, citing SAS. It reasonably declined to construe the generic term pharmaceutically acceptable in institution, then rejected a party's further arguments. To be clear, in Praxair, because I don't remember that case specifically, was that an APA challenge on the basis of notice and an opportunity to be heard, or was it an APA challenge of the propriety of the board adopting a different claim construction? I believe it was a challenge on the basis of SAS, on an SAS basis. But that's not my question. Was it a we didn't have adequate notice and an opportunity to be heard challenge? That's all this one is. Nobody here, I have not seen anywhere, Qualcomm say that the board can't adopt a different claim construction. They just want a chance to address it. I understand, Your Honor. I think the answer to your question is yes, though I have not read the details of the briefs of Praxair to be able to confirm whether they actually say notice and opportunity. What they definitely say is SAS precludes this. What SAS was doing was saying the APA says the board may not change theories without notice and an opportunity to be heard. Does the APA have multiple different independent requirements that an agency has to follow? Of course it does. Of course, yes. So notice and opportunity to be heard, another of which would be required to articulate fully and completely the rationale for your decision. A different one could be a fix in the scope of the petition. These are all requirements. The fact that Praxair found a different portion of the APA wasn't violated when the board decided to make the claim construction different has, to me, no bearing on whether or not a similar challenge based instead upon notice and opportunity to be heard would have been decided that way. I think I can explain the relationship. What the APA requires is not notice and opportunity to be heard about literally everything. What the APA requires is that an agency may not change theories in midstream without notice and opportunity to be heard. So what Praxair said is adopting a claim construction that neither party proposed is not changing theories midstream. Therefore, there is no predicate requirement for such a notice and opportunity to be heard. I do think that is precisely the situation here. It's exactly the same thing that happened in the Intellectual Ventures case where there was, likewise, the court said, there is no requirement for the board to adopt one of the party's constructions. So I think as a predicate matter where the board does not previously say it's going to construe the claim one way and then change, where the board instead just rejects both parties' arguments, that is not a change in theory midstream that gives rise to a notice and opportunity to be heard. And therefore, we don't even have to get to the question of whether there was adequate notice or not. Now, it is important, as was raised in Appellant's argument, that Qualcomm is not appealing on the merits. They did, in their briefing before the board, make arguments in support of the claim construction and make arguments specifically in support of the aspect of the claim construction for which they claim they never had an opportunity to be heard. The board itself made clear in its summary of the party's arguments at JA18 that Qualcomm argued for and cited evidence, including extrinsic evidence, in support of its extended transmission bandwidth construction, which is its version of the increase of bandwidth for the user. So Qualcomm had the opportunity to defend its construction it did defend its construction, the board rejected it, and the only thing the board did that is different from just rejecting Qualcomm's arguments outright and switching to petitioners is that it adopted its own construction, which this court has said it's free to do. So we don't even have to get to notice and opportunity to be heard. All of the cases that involve notice and opportunity to be heard at Qualcomm sites do not involve an adoption of a claim construction that neither party proposed. They instead involve reliance on an entirely new theory, entirely new prior art, et cetera. Those cases are not in this category where the court has said that there is no requirement to adopt one party's construction or the other. I will say that notwithstanding that, if this court were to find that there was some obligation for Qualcomm to have notice of the new construction, the notice that was given during Intel's argument before the board was sufficient. We simply disagree with Qualcomm that the notice was in any way unclear. Judge Wormeister did say specifically we'll think about whether that's necessary with regard to the specific aspect of the construction that Qualcomm disputes, and Qualcomm then had multiple opportunities to attempt to support that aspect of the construction if it had wanted to do so. It had its full argument time. It had the opportunity to seek reconsideration after final written decision. It had the opportunity to seek to submit before final written decision a supplemental brief given what happened at oral argument, and it elected not to do any of those, and then it elected not to actually challenge on the merits. I want to go back to your general point about maybe no notice. I think you're taking the position that no notice was required in this case. But what about the fact, I mean, something that makes this unique to me is the idea that both parties proposed the same construction. These six words were agreed to by both parties, and the ITC had specifically included these six words in the construction as well. Given that that seemed to be steeped in some history, those six words, and it was undisputed, I hear opposing counsel to be saying, you know, we didn't brief this. We didn't think about this because it was something that was undisputed. Both parties agreed. So why wouldn't notice be required in this circumstance? Understood, Your Honor. Remember, this is not whether it's against a claim destruction or not. This is simply whether the board should say something like give some notice. I'm having a hard time understanding why no notice is required. Anyway, go ahead. Yes, Your Honor. So I think the procedural history as you've characterized it there is just a little bit off. So you are correct that there are similarities between the two parties' constructions, but the parties did not actually propose the same six words. They proposed different constructions. And even as to these specific six words, they proposed different language. The language that Qualcomm has been describing here actually was part of the Intel proposal. What Qualcomm proposed was language that talked about carrier aggregation requiring multiple component carriers. It did not have the specific increase the bandwidth. It had language that we agree in substance encompasses a similar term. So this was not a situation where this was an undisputed claim term or an agreed to construction. In that circumstance, things might be different. This was a situation in which this term was indeed disputed. But counsel, not with regard to this portion of it. You know, a term can be ten words long, right? A term is not always a single word. And with regard to this portion, whether this claim limitation required increased bandwidth, you were both in complete agreement. You're correct, Your Honor, that both proposed constructions included the increased bandwidth aspect. Though I will say Qualcomm did not, it did indeed brief why that was appropriate in its briefing. That is, it defended the increased, as it called it, extended transmission bandwidth in its briefing. At JA-18, there's a discussion of what they cited. They cited the Dahlman reference. They cited portions of the specification. The Board understood Qualcomm's argument about why extended bandwidth was there. So it did have the- Counsel, I'm sorry to interrupt you, but do we have in the record, you're citing JA-18, which is the Board's opinion, right? Do we have in the appendix their briefs? We have the portions. I do not think that the portions that cite that aspect were in the appendix. They are certainly part of the overall record and available from the Patent Office as part of the certified list. But they are-that was what the Board-that's the Board's description of what the patent owner was doing. And the Board is correct. The patent owner did indeed defend all aspects of its construction. Right. So that would go under-just to make sure in my head I've got it right, you agree that would be part of, like, opportunity to respond. You had an opportunity to respond because you actually briefed it. I think that's right. I think that's right. I mean, I think it goes overall to the problem with their claiming that they never had an opportunity to be heard. I'm not sure-I'm not sure that they're-as we said, that they're actually-that notice and opportunity to respond is required on a claim construction issue anyway. But to the extent that there is some issue about Qualcomm claiming that it never had its arguments before the Board, that is just wrong. It did have them in its opening briefs. Just turning to the- Counsel, this is Judge Warren. Just to be clear, are you saying that the parties had presented evidence and argument regarding whether the prior art met the two limitations? Yes, Your Honor. I agree completely with Judge Moore and with the opposing counsel that in substance there wasn't a dispute about the aspect of the limitation that Qualcomm is now addressing here. Notwithstanding that, the constructions were different and both parties presented evidence in support of their construction. Qualcomm itself presented evidence in support of its increased bandwidth aspect of its construction. The Board understood that and identified it in its opinion in summarizing Qualcomm's arguments. So turning, if I could, to the second issue on the means-plus-function claims, this is not a case in which the algorithm rule of MS Gaming and Aristocrat applies. It applies only to means-plus-function claims in which the corresponding structure is a general-purpose computer. Here, both parties agree that the corresponding structure is a power tracker, and the Board found, quote, the power tracker is not a computer, unquote. That's JA-347. It's a factual finding by the Board. Qualcomm did not challenge that underlying finding of fact, nor would it have any basis to do so. And that ends the analysis. That makes this case exactly like and controlled by the Nevro case in which, just last year, this court addressed means for generating a paresthesia-free therapy signal with a signal frequency in a certain range. The corresponding structure there was found to be a signal generator, which was not a general-purpose computer, and the court in Nevro said that ends the analysis where the claim does not require a specific algorithm when the identified structure is not a general-purpose computer or processor. What we would say Qualcomm's error is, is focusing on the level of detail of description of the disclosed power tracker. That is not what's relevant for the algorithm rule. It's not the level of detail of the disclosure. What matters is whether the thing that is disclosed is or is not a general-purpose computer, not how much detail you use to describe the thing. Here, the thing that is disclosed is a power tracker. It is described specifically as an ASIC. It is described specifically in the prosecution history as a set of known circuits, and Nevro then controls, and that ends the analysis. I know that I'm over time, and I thank you very much. Does anyone have any further questions for Mr. Tompras? No. Okay, I have one more. You, nonetheless, undoubtedly heard all of my questions. I was surprised that there would be an attempt to extend the WMS gaming algorithm rationale to a piece of circuitry. Are you aware of any cases where that's ever been done in the past? I'm not, Your Honor, and I agree with counsel for Qualcomm that HTC and Sony are not cases in which there was an extension to circuitry. Those were general-purpose computers. I've never seen that done, and I agree with Your Honor that it would be a very broad expansion of what is otherwise a fairly limited rule in Aristocrat. Okay, thank you, Mr. Tompras. We will give some rebuttal time. Why don't you give him three minutes, and if colleagues have more questions, of course, we can extend it. Thank you, Your Honors. Three quick points on the APA issue. First, the decisions such as Praxair and Western Gecko, they're different for a variety of reasons in the present circumstances, but two important differences are in none of those cases did the board adopt a construction that was materially broader than what either party proposed, and in none of those cases did the board eliminate a feature of the claim construction that both parties had agreed to prior. Second, with respect to the different verbiage, I think the board's opinion at APPX 22 recognizes that whether it's increased bandwidth for the user or enhanced bandwidth, it's substantively the same thing. And third, with respect to the argument that Qualcomm briefed this issue down below, Your Honors, the issue that was briefed was the part of the construction, Qualcomm's construction, that required transmission from a single terminal, and if we look at APPX 1558, I believe, which is a demonstrative that Intel itself introduced, it highlights the terms that the parties disputed in brief, I'm sorry, the parts of the construction that the parties disputed during the proceedings, and it focused on a single terminal and transmission from a single terminal, not whether the term plurality of carrier-aggregated transmission signals requires increased bandwidth. Counsel, I understand that opposing counsel has argued that despite the fact that it was undisputed, you nonetheless presented argument to the board about why the increased bandwidth limitation, as opposed to the other portions of this construction, should be adopted by the board. Did you do that in a patent owner response? Is that correct? Your Honor, we advocated a construction that extended transmission bandwidth, but the focus of the argument was that it has to be from transmission from a single terminal. We did not focus on whether it has to be extended transmission bandwidth. We agreed with that part of the construction from Intel. Counsel, I want to make sure I understand. Did you explain why or cite evidence to support that part of your claim construction, that part being the extended bandwidth part? I believe there are citations to that, but the focus was on the user transmission from a single terminal. That was where the arguments were made. We did not focus on arguing about or making a case for the increase in the user bandwidth. We agreed with that. Okay. Anything further? All right. Counsel, I think we'll take this case under submission at this point. I thank both lawyers for an excellent argument. Thank you, Your Honor.